Estate of William McDowell, deceased. Appeal of Montgomery Insurance Trust and Safe Deposit Company, Guardian of Helen R. McDowell, Fannie B. McDowell, Margaret C. McDowell, Samuel R. McDowell, Jr., Catharine D. McDowell, W. Hunter McDowell and Mary McDowell, Minors.

*Will—Provision for grandchildren—Codicil.*

Testator gave his whole residuary estate to his seven children in equal shares at the death of his widow. The children were all living at the date of the will, at the death of the testator, and at the death of the widow. By a codicil he directed as follows: "In the final division of my estate I desire that the grandchildren shall be taken into consideration, and that the estate shall be so divided that the grandchildren shall have equal shares." *Held*, that the purpose of the codicil was to give the grandchildren the share which their parents would have taken if such parents had survived till the time of distribution.

Argued Jan. 30, 1900.  Appeal, No. 418, Jan. T., 1899, by Montgomery Insurance Trust and Safe Deposit Co., from decree of O. C. Montgomery Co., dismissing exceptions to auditor's report.  Before GREEN, C. J., McCOLLUM, DEAN, FELL and MESTREZAT, JJ.  Affirmed.

Exceptions to auditor's report.

The auditor, Montgomery Evans, Esq., reported as follows:

The testator, William L. McDowell, was, in his lifetime and at the time of his decease, an officer of the Leibrandt & McDowell Stove Company, incorporated, and a large owner of the corporation, and had been engaged in the manufacture of stoves for many years.  He died February 24, 1897, leaving to survive him a widow, Mary McDowell, who died February 18, 1899, intestate, and letters of administration upon her estate were duly granted to Samuel R. McDowell and William G. McDowell, who are the executors of said testator.

The first and partial account of the executors of William L. McDowell, deceased, was filed on April 29, 1899, and duly confirmed.  This account shows a balance in cash, due the estate, of $53,411.67, and credit was taken for unconverted assets, consisting of capital stock of the Leibrandt & McDowell Stove Company and other stocks, aggregating $121,832.  Upon the request of Mr. Hamersly, counsel for certain of the children of testator, the accountants submitted an income account, showing some changes in the amount of money in hand.  At the audit it was originally agreed by some of the children that certain claims against them, consisting of judgments and attachments in execution, should be awarded directly to the creditors out of their respective shares.  There were also certain advancements made by the executors, as shown by the income account submitted, since the death of the testator.  It was afterwards agreed by all of the parties in interest that the auditor should distribute the moneys, shown by the account as confirmed, leaving for subsequent distribution all questions pertaining to advancements, attachments in execution and judgments against heirs, so that this distribution should not be embarrassed or involved with any question whatever, other than the distribution of the cash balance of $53,411.67, as shown by the account.

The questions involved in the distribution arise under the peculiar wording of testator's will, which reads as follows:

"PHILADELPHIA, August 20, 1881.

"I William L. McDowell of the City of Philad. being of sound mind and memory do make with my own hands this my last will and testament.

"First I give and bequeath to my wife Mary all my household goods Horses carriages and farming utensils without inventory or appraisement.

"Second I will and direct that all the rest of my estate real and personal shall remain as it now is or be sold and the proceeds reinvested as may be directed by my executors and that my wife Mary shall have the whole income derived from said estate, with the privilege to her nevertheless, if the income should be more than her needs to divide the same with any of my children, charging the same to their account, or should there be sufficient estate to warrant it she may at any time anticipate the final division by paying over to any of my children a portion of their proportion not to exceed one-half of their supposed share and at her death the whole estate shall be divided between my said children share and share alike charging to each one who may have received any portion before this final division with such money or property as they may have received from my estate after my decease."

"I nominate and appoint as my executors my sons Samuel R. McDowell and William G. McDowell.

"In witness whereof I hereunto set my hand and seal this twentieth day of August 1881."

(Signed)        "W. L. McDOWELL.   [Seal.]

"In the final division of my estate I desire that the grandchildren shall be taken into consideration and that the estate shall be so divided that the grand children shall have equal shares.

(Signed)        "W. L. McDOWELL.   [Seal.]

At the date of the will of William L. McDowell he had living seven children, as follows: Mary Y. Manning, wife of Frank Manning, Louise McDowell, Samuel R. McDowell, William G. McDowell, Louis F. McDowell, Albert P. McDowell and Harry

P. McDowell. These all survived the testator and are all living at present. At the date of the will there was living one grandchild, William McDowell Manning, son of Mary Y. Manning, who is now of the age of twenty-two years. At the present time there are other grandchildren, as follows: Samuel R. McDowell has children, Helen R., aged sixteen years; Fannie B., aged thirteen years; Margaret C., aged ten years; Samuel R., Jr., aged nine years, and Catharine D., aged five years. William G. McDowell has children, as follows: W. Hunter, aged twelve years, and Mary A., aged ten years. For all of the foregoing minors, The Montgomery Insurance, Trust and Safe Deposit Company has been recently appointed guardian. Louis F. McDowell has children, as follows: Jesse T., aged six years; Carrie F., aged four years, and William Wallace, aged twenty-two months. Albert McDowell has one child, Albert Jr., aged nine months. Harry P. McDowell is married but has no children. These children of Louis F. McDowell and Albert P. McDowell have no guardian.

It will be noticed that some of the grandchildren named above were not in being at testator's death.

No claim is made by the administrators of the widow for any portion of the funds now for distribution.

The questions that are raised before the auditor arise out of the construction to be given to the codicil to the will. It is contended, in behalf of the guardian for certain of the grandchildren, that children and grandchildren, living at the time of the death of the widow of testator, to wit: on February 18, 1899, shall all take equal shares of the estate.

The contention, on the other hand, of counsel for certain of the children is that the grandchildren shall take no part in the distribution, and that the reference to them in the codicil was intended to apply only in the event of the death of the children before the death of the testator, or before the death of the widow, and that, in that event, the grandchildren were to take by representation through their parents.

OPINION.

The codicil to the will bears no date. So far as the appearance of the original instrument reveals, it was written at the same time as what precedes it. The handwriting and the ink

and the pen appear to be uniform with the body of the will.
The presumption, in the absence of some circumstance showing
the contrary, would be that this addition to the will was written
upon the date of the instrument itself.   The fact that no date
is given to the codicil or addition would imply that it was of
the same date as that which precedes it, which is dated.   This
codicil, so called, may therefore be construed as an addition to
the will rather than a codicil, as technically defined and under-
stood.   What was the intention of the testator when he added
these few lines to what he had already written as his last will
and testament?   The provision he had made for the distribu-
tion of his estate was perfectly clear in terms, and the objects
of his bounty were clearly and precisely defined and declared.
His first and primary desire was to provide for his widow, and
he gave her the income of his entire estate.   Subject to her
comfort, he provides for his children and is careful that there
shall be no distinction made between them, but that perfect
equality of distribution to them shall be made after his wife's
death.   He authorizes advancements to be made by her out of
any surplus income that she might have, but such advancements
are to be charged against the recipients so as to preserve equality.
Under the terms of this will, as he originally makes it, there
could be no doubt that his estate vested absolutely in his chil-
dren upon his death, to be distributed to them in possession
upon the death of the widow.   Does the addition to this will
cut down and destroy the absolute interest already given and
change his whole scheme of the division of his estate?   If the
view, asserted by the guardian for some of the grandchildren
shall prevail, the testator must have changed his mind entirely
between the signing of his name at the two places on this last
will: and instead of equality of distribution, in accordance with
that which we should expect from every parent in providing
for children equally meritorious and in accordance with the stat-
ute of distribution applying to parent and children, concluded
that his estate should be divided in a most unusual and unequal
manner.   That which was perfectly plain before is changed to
something indefinite, uncertain and contradictory.   That which
was absolutely given and vested is divested.   I cannot so inter-
pret this addition to the will.   The testator was clearly not a
lawyer nor familiar with the terms usually employed by the pro-

fession in drawing testaments. It seems to me that the testator, after he had written his will, reviewed it, and the thought occurred to him that between his death and the death of his widow, or between the writing of the will and the death of the widow, there was a possibility that some of the children might die, leaving children. His daughter, Mrs. Manning, had a child living when this will was written. He was desirous that the equality of distribution, which he had provided for among his children, should not be destroyed to the disinheritance of a grandchild by the death of its parent, before receiving his or her share. Therefore, he expressed his desire that the grandchildren shall be taken into consideration. A lawyer would have said that the grandchildren shall receive the share of the parent dying before distribution. It is said that he was presumed to know the law—that the children of any of his sons or daughters would take the parent's share without any provision made to that effect. If such presumption exist, it is a very weak one, and is opposed by the experience of lawyers and judges in construing home-made wills. The same presumption would require him to know what words to use to express his intentions clearly when he wrote the addition to the will. He had provided that his widow could advance to any of the children to the extent of one half of their supposed shares. This applied to the principal of the estate as well as to the income. The so-called codicil does not withdraw this power of anticipation. It is scarcely conceivable that he intended to revoke, by implication, this power given, and that if he did so intend he would not have used apt words in so declaring. If we are to hold that this addition to the will revokes all that is gone before, except the life estate in the widow, as we must if a construction be given to his final words, as claimed for, to whom shall the distribution be made? He says, " the estate shall be so divided that the grandchildren shall have equal shares." If we are to take this literally and absolutely then no one can take except the grandchildren. They are the ones to have equal shares—not with the children, but with each other. But to construe the will to effectuate the letter and not the spirit of this direction would result in ignoring the needs of his children for the benefit of their descendants. And unless the estate were to be held in trust until all of the children should have

died, so that his grandchildren might be determined in completeness of number, there would be the greatest inequality among them, between those who might be born at a certain date and those who should be born a day or year thereafter. But the law of this state would not tolerate a construction postponing the distribution until the death of all of the children. A trust will not be created when the testator has not declared it. The interests of the legatees and devisees vested either upon the death of the testator or, at the latest, upon the death of his widow. And to hold to a construction of this will by giving effect only to his final words would result in the greatest possible inequality. The grandchildren who might be born after the death of the widow or after the death of the testator, whichever might be adopted, as the time for vesting, would receive no share of the testator's bounty. Such a distribution under all the canons of construction of wills will not be tolerated unless the intent of the testator so to do is absolutely clear and positive so that no other meaning can be given to his words. The same inequality without reason, so far as the will discloses, and so inconsistent with the declared intentions of the testator, as he originally expressed them, arises if it be said that grandchildren shall share with children equally. Assuming that the time for the vesting of these interests was postponed to the death of the widow, the grandchildren that might be born subsequently would inherit nothing. I, therefore, conclude that when the testator made this addition to his will his only purpose was to provide for grandchildren in the event of their parents having died before distribution should be made. To hold otherwise would be to permit, by reason of indefinite and uncertain words at the end of the will, the revocation of the general scheme of distribution adopted and clearly stated by the testator, the cutting down of absolute gifts to uncertain or indefinite gifts or no gifts at all, and inequality of distribution among children and grandchildren without the slightest reason given therefor.

This will is sui generis and precedents arising in the construction of other wills are of little value. The only question here is to find out, from the words of the entire will, the meaning of the testator. To construe the will, as contended for by the guardian of the grandchildren, seems to me not to be war-

ranted by the words of the testator, but to be absolutely at variance with all the well established rules declared by courts in determining the meaning of wills, where words of doubtful meaning are used.

*N. H. Larzelere*, for appellant.—Where a will and codicil are irreconcilable, the codicil, as the last indication of the testator's mind, must prevail: Gray v. Sherman, 5 Allen, 198.

The children and grandchildren take per capita: Scott's Est., 163 Pa. 165; Minnig v. Batdorff, 5 Pa. 503.

*John G. Johnson*, with him *Edmund G. Hamersly*, for appellee.

PER CURIAM, February 12, 1900:

The will of the testator by its express terms gave the whole residuary estate to all of his children in equal shares at the death of his widow. There were seven children living at the date of the will, at the death of the testator and at the death of the widow. Undoubtedly these seven legatees were to take the whole estate under the literal operation of the will. Evidently it occurred to the testator at some later date that no provision was made for grandchildren in the event of the death of any of the children, and he attempted in his own very crude way to provide for that exigency by the codicil. It is too plain for argument that his meaning was to embrace the children of dead children by the terms of the codicil. Any other interpretation would be manifestly at war with the whole scheme of the will. We affirm the decree and concur with the learned auditor in the reasons expressed in his report.

Decree affirmed and appeal dismissed at the cost of the appellant.